UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


LYNNE MACKENZIE and
JAMES MACKENZIE,
        Plaintiffs,

        v.                                          CIVIL ACTION NO.
                                                    11-12014-MBB
FLAGSTAR BANK, FSB,
        Defendant.


**MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT AND FLAGSTAR BANK'S REQUEST
FOR DECLARATORY JUDGMENT (DOCKET ENTRY # 21);
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
(DOCKET ENTRY # 35)**

**January 9, 2013**

**BOWLER, U.S.M.J.**

        Pending before this court is a motion to dismiss and a
request for a declaratory judgment filed by defendant Flagstar
Bank, FSB ("Flagstar").  (Docket Entry # 21).  Also pending is a
motion for summary judgment (Docket Entry # 34) filed by
plaintiffs Lynne MacKenzie and James MacKenzie ("plaintiffs").

                        PROCEDURAL BACKGROUND

        Plaintiffs filed a complaint against Flagstar on October 19,
2011, in Massachusetts Superior Court (Bristol County) seeking
injunctive relief to prevent a foreclosure on their home in
Dighton, Massachusetts.  (Docket Entry # 1-1).  On November 14,
2011, Flagstar, which holds a mortgage on the property, removed
the case to this court.  (Docket Entry # 1).

The operative amended complaint (Docket Entry # 17) sets out the following claims:  (1) fraud; (2) transacting business without authority; (3) violation of Massachusetts General Laws chapter 93A ("chapter 93A"); (4) breach of contract; (5) violation of Massachusetts General Laws chapter 140D ("chapter 140D"); (6) violation of Massachusetts General Laws chapter 93, section 48 ("section 48"); (7) rescission; (8) quiet title; (9) negligence; (10) promissory estoppel; and (11) declaratory judgment.

In April 2012, plaintiffs filed an opposition to the motion to dismiss (Docket Entry # 34) and a revised opposition (Docket Entry # 39) in May 2012.  Plaintiffs filed the summary judgment motion (Docket Entry # 35) in April 2012.  On May 3, 2012, Flagstar filed an opposition to the summary judgment motion. (Docket Entry # 40).  On May 7, 2012, this court held a hearing and took the motion to dismiss (Docket Entry # 21) and the motion for partial summary judgment (Docket Entry # 35) under advisement.

I.   <u>MOTION TO DISMISS (DOCKET ENTRY # 21)</u>

<u>STANDARD OF REVIEW</u>

When considering a motion to dismiss under to Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)"), a "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'"  <u>Pettengill v. Curtis</u>, 584 F.Supp.2d 348, 362 (D.Mass. 2008) (quoting <u>Rodriguez-Ortiz v. Margo Caribe,</u>

Inc., 490 F.3d 92, 96 (1st Cir. 2007)); see also Alternative

Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30,

33 (1st Cir. 2001).  To withstand a Rule 12(b)(6) motion, the

complaint must include factual allegations that, when taken as

true, demonstrate a plausible claim to relief even if actual

proof of the facts is improbable.  Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 555-58 (2007); see also Ashcroft v. Iqbal,

556 U.S. 662, 677-78 (2009) ("claim has facial plausibility when

the plaintiff pleads factual content that allows the court to

draw reasonable inference that the defendant is liable for the

misconduct alleged"); Trans-Spec Truck Service, Inc. v.

Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  To

withstand a motion to dismiss, the complaint must state more than

mere conclusions of law reciting the elements of the cause of

action.  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; see

also Ascroft v. Iqbal, 556 U.S. at 677-79.

In order to determine whether a Rule 12(b)(6) motion should

be granted, a court should consider the complaint and any

documents attached to it.  See Trans-Spec Truck Service, Inc. v.

Caterpillar Inc., 524 F.3d 59, 65-66 (1st Cir. 2008) (court may

consider documents incorporated by reference in the complaint,

"'matters of public record, and other matters susceptible to

judicial notice'" without converting Rule 12(b)(6) motion to

summary judgment motion); <u>see</u> <u>also</u> <u>Velazquez Arroyo v. MCS Life</u> <u>Ins. Co.,</u> 418 F.Supp.2d 11, 14 (D.P.R. 2006) (exception may be made "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents not sufficiently referred to in the complaint")

Legal conclusions are not included in the Rule 12(b)(6) record.  <u>See</u> <u>Dixon v. Shamrock Financial Corp.</u>, 522 F.3d 76, 79 (1st Cir. 2008) (accepting "well-pleaded facts as true, but reject[ing] 'unsupported conclusions or interpretations of law'" in reviewing Rule 12(b)(6) dismissal); <u>see</u>, <u>e.g.</u>, <u>Soto-Torres v.</u> <u>Fraticelli</u>, 654 F.3d 153, 157 n.2 (1st Cir. 2011) ("complaint's allegations that Soto-Torres was 'illegally and unreasonabl[y] detained' and that 'excessive force' was used in pushing him to the floor are legal conclusions that are not to be credited"). Drawing reasonable inferences in plaintiffs' favor but eschewing reliance on "'bald assertions, . . . unsubstantiated conclusions,'" <u>Fantini v. Salem State College</u>, 557 F.3d 22, 26 (1st Cir. 2009), and legal conclusions, <u>see</u> <u>Dixon v. Shamrock</u> <u>Financial Corp.</u>, 522 F.3d at 79 (rejecting "'unsupported conclusions or interpretations of law'" in reviewing Rule 12(b)(6) dismissal), the amended complaint sets out the following facts.

FACTUAL BACKGROUND

Plaintiffs own property located at 277 Williams Street in Dighton ("the property") as their primary residence.  (Docket Entry # 17, ¶ 5).  On May 24, 2007, plaintiffs gave a promissory note ("2007 promissory note") in the amount of $275,877.00 at the interest rate of 6.5%[1] to Bankstreet Mortgage, LLC ("Bankstreet") secured by a mortgage ("2007 mortgage") on the property executed the same day.  (Docket Entry # 17, ¶ 10).  The 2007 promissory note was assigned to Flagstar by ReJaun Foster, a loan operations associate at Bankstreet.  (Docket Entry # 23-1).  Plaintiffs, as mortgagor, executed the mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for the lender, Bankstreet.  (Docket Entry # 17-1).  The 2007 mortgage was recorded at the Northern Bristol County Registry of Deeds ("2007 deed").[2]  (Docket Entry # 17, ¶ 11).

The 2007 mortgage granted the right of assignment, stating that, "The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower."  (Docket Entry # 17-1, p. 4).  The 2007 mortgage also allowed for the severability of the 2007 promissory note and the

---

[1]  The 2007 promissory note reflects plaintiffs' promise to pay the principal sum of $275,877.00 and the interest rate of 6.5% to Bankstreet.  (Docket Entry # 23-1).
[2]  Plaintiffs refer to the 2007 promissory note and the 2007 deed collectively as the "2007 Deed of Trust" throughout the majority of the amended complaint.  (Docket Entry # 17, ¶ 11).

mortgage, stating that "the provisions of this Security Instrument and the Note are declared to be severable." (Docket Entry # 17-1, p. 5). Flagstar and a number of predecessor servicers signed agreements with the United States Department of the Treasury to participate in the Home Affordable Modification Program ("HAMP") and the Home Affordable Foreclosure Alternatives program ("HAFA").[3] (Docket Entry # 17, ¶¶ 98-100).

On May 13, 2009, plaintiffs submitted an application for a loan modification to Flagstar. (Docket Entry # 17, ¶ 102). On July 21, 2009, plaintiffs and Flagstar executed a loan modification agreement ("2009 agreement"), reducing the interest rate to 5.75% on the unpaid principal balance of $279,575.23. (Docket Entry # 17-2). The 2009 agreement gave a note and a mortgage on the property to Flagstar and to MERS as Flagstar's nominee. (Docket Entry # 17, ¶ 12). The 2009 agreement was recorded in the Northern Bristol County Registry of Deeds. (Docket Entry # 17, ¶ 12).

The 2009 Agreement, titled "LOAN MODIFICATION AGREEMENT," states in pertinent part:

---

[3] "HAMP aims to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels." Markle v. HSBC Mortgage Corp. (USA), 844 F.Supp.2d 172, 172 (D.Mass. 2011). HAFA is a short sale program used as an alternative to loan modification or refinancing. See generally Sindles v. Saxon Mortgage Services, Inc., 2012 WL 1899401, *2 (N.D.Ill. May 22, 2012).

> This Loan Modification Agreement . . . amends and
> supplements (1) the Mortgage, Deed of Trust, or Security
> Deed (the "Security Instrument"), dated MAY 24, 2007 and
> recorded in Book 16844, Page 82-88, BRISTOL COUNTY,
> MASSACHUSETTS, and (2) the Note, in the original principal
> amount of U.S. $ 275,877.00, bearing the same date as, and
> secured by, the Security Instrument, which has been assigned
> MERS Registration No. 100052550144202354 and MERS
> Registration Date MAY 24, 2007, and which covers the real
> and personal property described in the Security Instrument
> and defined therein as the "Property", located at 277
> WILLIAMS ST NORTH DIGHTON, MASSACHUSETTS 02764.

(Docket Entry # 17-2) (punctuation in original).  The 2009

agreement identifies the 2007 mortgage as the contract that it

"amends and supplements."  (Docket Entry # 17-2).

On October 31, 2010, plaintiffs submitted a new application

for a loan modification to Flagstar.  (Docket Entry # 17, ¶ 104).

On April 14, 2011, Flagstar denied the application for

modification.  (Docket Entry # 17, ¶ 106).  On April 19, 2011,

plaintiffs filed an application for a HAMP modification to

Flagstar.  (Docket Entry # 17, ¶ 107).  On August 31, 2011,

Flagstar evaluated plaintiffs under the HAMP guidelines and found

that plaintiffs were eligible for HAMP modification. (Docket

Entry # 17, ¶ 108).

MERS assigned the 2007 mortgage as modified by the 2009

agreement to Flagstar on May 3, 2011.[4]  (Docket Entry # 17-6).

_____

[4]  Plaintiffs conclude that the 2007 mortgage was securitized
into Lehman Brothers Trust 2008-2 on the basis of the loan
investigation and real estate securitization pro audit conducted
by plaintiffs and attached as an exhibit to the amended complaint
(Docket Entry # 17-5).  (Docket Entry # 17, ¶¶ 29-31).  The

On May 11, 2011, Harmon Law Offices, P.C. ("Harmon")[5] filed a
notice with the Commonwealth of Massachusetts Land Court on
behalf of Flagstar claiming authority to foreclose on the
property.  (Docket Entry # 17, ¶ 23).  On October 4, 2011, Harmon
securitization audit states in pertinent part:

> A report on Mortgage Electronic Registration Systems, Inc.
> discloses that the subject loan is serviced by Flagstar
> Bank, FSB.  This indicates that this loan was securitized
> into a trust wherein Flagstar Bank, FSB is a participant.
> Flagstar Bank, FSB is a known originator for trusts
> established by members of the Lehman Brothers group.

A search of filings with the Securities and Exchange Commission
for securitization trusts established in the years 2007 and 2008
indicates that the trust into which the subject loan *could have
been securitized* into would be the Lehman Mortgage Trust 2008-2.

(Docket Entry # 17-5, p. 8) (emphasis added).  Plaintiffs rely on
the securitization audit to conclude:

> . . . the 2007 Mortgage Loan was serviced by Flagstar.  This
> indicates that the 2007 Mortgage Loan *was securitized* into a
> trust wherein Flagstar is a participant.  Flagstar is a
> known originator for trusts established by members of the
> Lehman Brothers group.

(Docket Entry # 17, ¶ 29) (emphasis added).

Even drawing reasonable inferences in plaintiffs' favor, the
fact that the 2007 mortgage was serviced by Flagstar, a known
originator of trusts established by Lehman Brothers, does not
show that *this* mortgage was securitized.  Plaintiffs include the
May 3, 2011 assignment of mortgage from MERS to Flagstar in the
amended complaint plainly showing the assignor as Sharon Morgan,
Vice President on behalf of MERS.  (Docket Entry # 17-6).
Despite the clear identification of the assignor, plaintiffs
argue that, "The assignment of the 2007 Deed of Trust [(2007
mortgage)] is defective for failing to identify the assignor."
(Docket Entry # 17, ¶ 34).
_____
[5]  Harmon provided legal representation to Flagstar during the
foreclosure process.

sent a notice of foreclosure sale to plaintiffs on behalf of Flagstar on the basis of the 2007 Deed of Trust. (Docket Entry # 17, ¶ 24). The notice informed plaintiffs that Harmon would conduct a foreclosure sale of the property on or after November 3, 2011. (Docket Entry # 17, ¶ 24).

On November 2, 2011, plaintiffs received Flagstar's HAMP modification offer. (Docket Entry # 17, ¶ 115). Flagstar had scheduled the foreclosure sale for November 16, 2011. (Docket Entry # 17, ¶ 115). Flagstar "closed" the HAMP loan modification offer on November 8, 2011. (Docket Entry # 17, ¶ 116).

On February 10 or 11, 2012,[6] plaintiffs "served Flagstar with a notice to rescind the 2009 Mortgage Loan (and to the extent applicable, the 2007 Mortgage Loan) based on defects in formation, material representations, failures to make material disclosures, and for material breach." (Docket Entry # 17, ¶ 96). Flagstar did not accept the letter as a valid rescission of the 2007 mortgage or the 2009 agreement. (Docket Entry # 17, ¶ 97). A foreclosure sale on the property has not taken place.

<u>DISCUSSION</u>

Flagstar seeks to dismiss the amended complaint under Rule 12(b)(6). (Docket Entry # 21). Flagstar also seeks a

---

[6] The notice of rescission (Docket Entry # 17-8) shows a date of February 10, 2012. The amended complaint identifies the date as February 11, 2012. (Docket Entry # 17, ¶ 96).

declaratory judgment that plaintiffs' notice of recession "is invalid and without effect." (Docket Entry # 21). Flagstar submits that plaintiffs fail to demonstrate a right to rescind the 2007 mortgage or the 2009 agreement. (Docket Entry # 22).

Plaintiffs maintain there is no evidence of a valid assignment of the 2007 mortgage to Flagstar. Flagstar therefore does not have the authority to pursue a foreclosure on the property, according to plaintiffs. (Docket Entry # 39).

A.  Chapter 140D Violations (Count V)

The amended complaint alleges that Flagstar violated chapter 140D, commonly known as the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"). Plaintiffs further allege that Flagstar and its predecessor, Bankstreet, failed to provide material disclosures and disregarded plaintiffs' exercise of their right of recession under the MCCCDA. (Docket Entry # 17, ¶¶ 214 & 221).

In response, Flagstar contends that the four year statute of limitations under chapter 140D, section 10(f), that applies to loan modifications bars the MCCCDA claim. First, Flagstar maintains that the 2009 agreement was not a financing or refinancing under the MCCCDA, but a loan modification that Title 209 of the Code of Massachusetts Regulations, section 32.20(1) ("section 32.20"), exempts from the reach of the MCCCDA. (Docket

Entry # 22, ¶ H).  Second, because the 2009 agreement was a loan modification, the four year statute of limitations began to run on May 24, 2007, the date of the 2007 mortgage, and has since lapsed, according to Flagstar.  (Docket Entry # 22, ¶ H). Flagstar additionally points out that the MCCCDA was modeled after the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and should be construed in accordance with the findings of other courts that a loan modification is not subject to the disclosure requirements of the TILA.[7]  (Docket Entry # 22, ¶ H).

Plaintiffs maintain that the 2009 agreement was a refinancing because "the incorporated terms add very little to the loan transaction . . . thereby giving rise to the right of rescission."  (Docket Entry # 39, ¶ G).  Plaintiffs also argue that the law relied upon by Flagstar only concerns loan modifications by the same lender.  (Docket Entry # 39, ¶ G).

---

[7]  As stated by the court in DiVittorio:

[T]he Federal Reserve Board (the "FRB" or the "Board") has exempted credit transactions within Massachusetts from chapters two and four of the TILA; contained in those chapters is the statute of limitations for actions for damages and rescission.

DiVittorio v. HSBC Bank USA, NA, 670 F.3d 273, 282 (1st Cir. 2012).  Flagstar's alternative argument is that the statute of limitations for any claim brought under the TILA has expired. This argument does not need to be reached because claims for rescission in Massachusetts need to be brought under the MCCCDA. Id.

Section 32.20(1) states in pertinent part:

A refinancing occurs when an existing obligation that was subject to 209 CMR 32.00 is satisfied and replaced by a new obligation undertaken by the same consumer.  The following shall not be treated as a refinancing: . . .

(b) A reduction in the annual percentage rate with a corresponding change in the payment schedule. . .

(d) A change in the payment schedule or a change in collateral requirements as a result of the consumer's default or delinquency, unless the rate is increased, or the new amount financed exceeds the unpaid balance plus earned finance charge and premiums for continuation of insurance of the types described in 209 CMR 32.04(4).

209 Mass. Code Regs. § 32.20(1); see In re Washington, 455 B.R. 344, 350 (Bankr.D.Mass. 2011) (209 Mass. Code Regs. § 32.20 applies to the MCCCDA).

As stated in the factual background, the 2009 Agreement, titled "LOAN MODIFICATION AGREEMENT," states in pertinent part, "This Loan Modification Agreement . . . amends and supplements (1) the Mortgage . . . and (2) the Note."  (Docket Entry # 17-2). In addition under 32.20(b), the interest rates changed from 6.5% in the 2007 mortgage to 5.750% in the 2009 agreement. Accordingly, the 2009 agreement is a modification of the 2007 mortgage and therefore exempt from section 32.20.  The 2009 agreement thus does not fall within the provisions of the MCCCDA.

The limitations period to exercise the right of rescission under the MCCCDA is four years.  DiVittorio v. HSBC Bank USA, NA,

670 F.3d at 285.   Furthermore, the four year limitations period
does not restart when an existing mortgage loan is modified.   See
Id. at 276-77 & 285.   In DiVittorio, the MCCCDA four year period
for rescission ran from the date of the original mortgage loan,
even though a loan modification was later executed by an assignee
of the original lender.   Id.   Therefore, plaintiffs do not have a
right to rescind the 2007 mortgage due to the expiration of the
four year statute of limitations and plaintiffs do not have a
right to rescind the 2009 loan modification under the MCCCDA.

B.   Fraud (Count I)

    Flagstar next submits that the fraud claim "fails as a
result of Plaintiffs' failure to allege the factual predicate for
a fraud claim" as required by Rule 9(b), Fed. R. Civ. P. ("Rule
9(b)").   (Docket Entry # 22, ¶ D).   Flagstar argues in the
alternative that plaintiffs lack standing to challenge the
assignment of the 2007 mortgage as amended by the 2009 agreement
from MERS to Flagstar or to challenge the alleged securitization
of the loan.   (Docket Entry # 22, ¶ D).

    Plaintiffs maintain that they "have standing to challenge
the right of any party to foreclose on [their] Property."
(Docket Entry # 39, ¶ B).   Plaintiffs argue that in
Massachusetts, a mortgagor has standing to challenge a
foreclosure or attempted foreclosure and the law does not bar a

mortgagor from challenging the validity of ownership of the mortgage.  (Docket Entry # 39, ¶ B).  Plaintiffs also argue that their basis for challenging the assignment of the 2007 mortgage arises from the absence of a clause in the 2007 mortgage authorizing the lender to sell or transfer interests in the loan. (Docket Entry # 39, ¶ B).

Plaintiffs' argument claiming standing to challenge the assignment of the mortgage to Flagstar is misguided.  "Courts have repeatedly held that mortgagors have no standing."  Wenzel v. Sand Canyon Corp., 2012 WL 219371, *11 (D.Mass. Jan. 5, 2012). "An assignment is a contract and the fact that what was assigned was a mortgage does not alter its legal character."  Oum v. Wells Fargo, N.A., 2012 WL 390271, *4 (D.Mass. Feb. 8, 2012). Furthermore, "for a plaintiff to prosecute an action based on a contract, he or she must either be a party to the contract at issue or an intended third-party beneficiary."  Id.  "'[F]or over a century, state and federal courts around the country [have held] that a litigant who is not a party to an assignment lacks standing to challenge that assignment.'"  Peterson v. GMAC Mortg., LLC, 2011 WL 5075613, *2 (D.Mass. Oct. 25, 2011).

Plaintiffs fail to allege and the Rule 12(b)(6) facts do not support that they are parties to the assignment or intended third party beneficiaries.  See, e.g., Armand v. Homecomings Financial

14

Network, 2012 WL 2244859, *3 (D.Mass. June 15, 2012). Mortgagors under the "no-standing" principle "lack standing to challenge the title resulting from a foreclosure sale by way of contesting the validity of an underlying assignment prior to the foreclosure." Id.; Wenzel v. Sand Canyon Corp., 2012 WL 219371, at *10 (mortgagors' challenge to assignment of their mortgage "does not present an actual controversy").

Plaintiffs cite to Rosa v. Mortgage Electronic Systems, Inc., 821 F.Supp.2d 423, 429 n.5 (D.Mass. 2011),[8] as an example of a court in this district that allowed inquiry by a mortgagor into the validity of a mortgagee's right to foreclose. (Docket Entry # 39, ¶ B). The Rosa court, however, primarily addressed the issue of MERS's authority to assign a mortgage as nominee of a dissolved original lender. See Id. at 427-28. The Rosa court simply noted that if the allegations were true, then "the plaintiffs appear to have standing." Id. at 429 n.5. Unlike Rosa, this case does not involve an assignment of a mortgage held by MERS as nominee of a dissolved lender.

---

[8]  As stated by the court in Rosa:

[a]ny effort to foreclose by a party lacking "jurisdiction and authority to carry out a foreclosure . . . is void."  The Plaintiffs appear to have standing under this principle, because the allegations, if proven, would render the foreclosure sale void, under Massachusetts law.

Rosa v. Mortgage Electronic Systems, Inc., 821 F.Supp.2d at 429 n.5 (citations omitted).

Plaintiffs also concede that other courts in this district conclude that U.S. Bank National Association v. Ibanez, 941 N.E.2d 40 (Mass. 2011), did not grant mortgagors standing to challenge the validity of mortgage assignments. (Docket Entry # 39, ¶ B). Thus, Ibanez does not "provide an independent basis for mortgagors to collaterally contest previously executed mortgage assignments to which they are not a party and that do not grant them any interests or rights." See, e.g., Peterson v. GMAC Mortgage, LLC, 2011 WL 5075613, at *4 & nn.3, 4.

Plaintiffs assert that case law remains unsettled as to the extent Ibanez allows mortgagors to challenge the validity of a mortgage assignment. (Docket Entry # 39, ¶ B). Plaintiffs base their argument for standing on the authority of a mortgagor to determine "the true mortgage holder in a pre-foreclosure action." (Docket Entry # 39, ¶ B) (emphasis in original). In contrast, "where a mortgage debtor was attempting to challenge the assignment of a note between noteholders, the First Circuit Bankruptcy Appellate Panel held that such debtors did not have standing to challenge the assignments." Woods v. Wells Fargo Bank, N.A., 2012 WL 2577580, *2 (D.Mass. July 3, 2012) (citing In re Correia, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011)). Here, as well as in Woods and In re Correia, mortgagors, such as

plaintiffs, do not have standing to challenge the validity of a mortgage assignment to which they are not a party.

Finally, plaintiffs assert they have standing to challenge the mortgage assignment because the mortgage lacked a provision authorizing the lender to sell or transfer interests.  (Docket Entry # 39, ¶ B).  Plaintiffs claim that "any splitting of the note and mortgage or interest therein is a breach of contract." (Docket Entry # 39, ¶ B).  This argument is without merit.  The 2007 mortgage plainly states that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns" and that "MERS is the mortgagee under this security instrument."  (Docket Entry # 17-1, p. 1).  The 2007 mortgage also unambiguously states, "The covenants and agreements of this Security Instrument *shall* bind and benefit the successors *and assigns* of Lender and Borrower."  (Docket Entry # 17-1, p. 4) (emphasis added).  The 2007 mortgage therefore authorizes the assignment of the interest irrespective of plaintiffs' consent.

Plaintiffs' argument that the splitting of the note and the 2007 mortgage or interest is a breach of contract similarly lacks merit.  Massachusetts is a "title theory" state and "[a]s a consequence . . . a mortgage and the underlying note can be split."  Eaton v. Federal National Mortgage Association, 2012 WL 2349008, *4 (D.Mass. June 22, 2012).  "[T]he mere transfer of a

mortgage note does not carry with it the mortgage." Id.  In addition, the 2007 mortgage expressly allows for the splitting of the mortgage and note.[9]  (Docket Entry # 17-1, p. 5).

Plaintiffs also fail to show how Flagstar's acts were relied upon to their detriment.  See, e.g., Wenzel v. Sand Canyon Corp., 2012 WL 219371, at *16-17 (fraudulent misrepresentation claim dismissed for failure to plead reliance).  The amended complaint merely states that Flagstar was not authorized to conduct business in Massachusetts but does not articulate how plaintiffs relied upon Flagstar's actions to their detriment.

As a means to avoid dismissal of the fraud claim, plaintiffs argue that chapter 140D, section 33 ("section 33"), creates a cause of action against Flagstar as the assignee of the 2007 mortgage for any fraud committed by Bankstreet in its procurement.  (Docket Entry # 39, ¶ C).  As stated previously, the 2007 mortgage and the 2009 agreement do not fall under the provisions of chapter 140D.  Additionally, in Massachusetts the assignee of a mortgage is not liable for any fraud committed by its predecessor in interest.  See McBride v. Am. Home Mortg. Servicing Inc., 2012 WL 931247, *3 (D.Mass. Mar. 19, 2012) ("'principle that assignee stands in assignor's shoes . . . has

---

[9]  The 2007 mortgage states in pertinent part that, "the provisions of this Security Instrument and the Note are declared to be severable."  (Docket Entry # 17-1, p. 5).

never been interpreted to mean that the assignee will be liable for all the assignor's wrongs'").

Plaintiffs further maintain that Flagstar's alleged refusal to comply with HAMP regulations establishes a prima facie case of misrepresentation. "The prevailing view in this district and others is that defaulted mortgagors are not entitled to sue for HAMP violations as third-party beneficiaries under an agreement between the bank and the government absent a clear indication in the contract to the contrary." Seidel v. Wells Fargo Bank, N.A., 2012 WL 2571200, *3 (D.Mass. July 3, 2012). In addition, HAMP "does not create an independent duty for mortgagors where no other basis for that duty exists." Id. at *4.

Plaintiffs' final argument to support the fraud count is that the "true identity, nature and purpose of MERS" was misrepresented and that they "were fraudulently misled into believing the note and mortgage holders, and any successor holders would be readily identifiable by Plaintiffs." (Docket Entry # 39, ¶ C). As stated earlier, Flagstar is not liable for any misrepresentation regarding MERS' identity by Bankstreet. In the 2007 mortgage, Bankstreet named MERS as the nominee and in the 2009 agreement Flagstar named MERS as the nominee. At no time was the true identity of MERS misrepresented because both the 2007 mortgage and the 2009 agreement identified MERS as the

nominee.  Also, the assignment of the mortgage to Flagstar was
recorded and therefore MERS was readily identifiable.

Plaintiffs also fail to "articulate[] any theory under which
[Flagstar] would have been obligated to explain to [them] the
ramifications of a securitization and sale of her mortgage."
Cazales v. HSBA Bank, N.A., 2012 WL 1969320, *2 (D.Mass. June 1,
2012).  Where "nondisclosure does not generally amount to fraud,
and is not a tort of any sort where the nondisclosing party has
no duty to speak," there is no finding of fraud.  Id.
Accordingly, the fraud claim does not survive the motion to
dismiss.

C.   Transacting Business Without Authority (Count II)   Plaintiffs
allege that Flagstar was acting as a debt collector in
Massachusetts without a professional license authorizing it to be
one.  (Docket Entry # 17, ¶¶ 172-75).  Flagstar argues that it is
not a debt collector as defined in Massachusetts General Laws
chapter 93, section 24A ("section 24A"), because it is not
attempting to collect "a debt owed or due or asserted to be owed
or due to another."  (Docket Entry # 22, ¶ E) (emphasis in
original).  Flagstar also argues that section 24A does not grant
a private right of action.  (Docket Entry # 22, ¶ E).

In opposing the motion to dismiss, plaintiffs further argue
that Flagstar has not filed the necessary documents under

Massachusetts General Laws chapter 156D, sections 15.01 and 15.02(a).  (Docket Entry # 39, ¶ D).  Plaintiffs also argue that as "the owner of a debt that was due another and in default at the time it was obtained," Flagstar is a debt collector under section 24A.  (Docket Entry # 39, ¶ D).

Plaintiffs fail to allege facts sufficient to show that Flagstar is a debt collector under section 24A.  Indeed, as stated in the amended complaint, plaintiffs "gave a note and mortgage on PROPERTY to Flagstar and to MERS" on July 21, 2009, and the 2009 agreement was "a credit transaction in which a security interest was acquired in real property."  (Docket Entry # 17, ¶¶ 12-14).  Based on plaintiffs' own pleadings, plaintiffs contracted directly with Flagstar for a new mortgage interest. Therefore, the debt could not have been "due another" under section 24F.

Alternatively, Flagstar is correct that section 24A does not grant a private right of action.  See Ishaq v. Wachovia Mortg., FSB, 2010 WL 1380386, *4 (D.Mass. April 2, 2010).  Section 24A "contains no hint that a private cause of action was created or intended."  Id.

D.  Violation of Chapter 93A (Count III)

Flagstar seeks dismissal of the chapter 93A claim because plaintiffs did not deliver a demand letter to Flagstar as

21

required under chapter 93A, section nine ("section nine").

(Docket Entry # 22, ¶ F).  Plaintiffs argue that despite having

sent a demand letter,[10] a demand letter is not required under

section nine because "Flagstar does not maintain an office in

Massachusetts or does not maintain assets in Massachusetts."

(Docket Entry # 39, ¶ E).  Plaintiffs, in the alternative, argue

that if a demand letter is required, "an appropriate remedy would

be to permit Plaintiff to send the demand and amend his complaint

accordingly" alleging a violation of Massachusetts law by

Flagstar.  (Docket Entry # 39, ¶ E).

Section nine states in pertinent part, "At least thirty days

prior to the filing of any such action, a written demand for

relief, identifying the claimant and reasonably describing the

unfair or deceptive act or practice relied upon and the injury

suffered, shall be mailed or delivered to any prospective

respondent."  Mass. Gen. L. ch. 93A, § 9(3).  Section nine also

states that the demand requirement shall not apply "if the

prospective respondent does not maintain a place of business or

does not keep assets within the commonwealth."  Id.

Plaintiffs' argument that Flagstar does not maintain an

office in Massachusetts or maintain any assets in the state is

---

[10]  Plaintiffs did not produce a demand letter or claim that one
was served in the amended complaint but merely state in their
opposition to the motion to dismiss that one was served on
Flagstar.  (Docket Entry # 39, ¶ E).

misguided.  Flagstar clearly maintains assets within Massachusetts through its security interest in plaintiffs' property.  See Okoye v. Bank of N.Y. Mellon, 2011 WL 3269686, *4 (D.Mass. July 28, 2011) ("recorded mortgage secured by real property located in the Commonwealth is an 'asset[ ] within the commonwealth' for purposes of Chapter 93A").  Plaintiffs state in the amended complaint that Flagstar has a "mortgage" on the property "recorded in the Northern Bristol County Registry of Deeds."  (Docket Entry # 17, ¶ 12).

As to plaintiffs' argument that a demand letter is not required or this court should allow them to send the letter belatedly is also misplaced.  The amended complaint does not state that a demand letter was ever served on Flagstar.  The demand letter requirement in section nine "'is not merely a procedural nicety, but, rather, a prerequisite to suit'" and "'must be alleged in the plaintiff's complaint.'"  Okoye v. Bank of N.Y. Mellon, 2011 WL 3269686, at *4 (quoting Rodi v. Southern New England School of Law, 389 F.3d 5, 19 (1st Cir. 2004)).  A "'failure to send a demand letter is sufficient ground to justify dismissal of the Chapter 93A claim[s].'"  Id.  Plaintiffs' failure to allege that a demand letter was sent to Flagstar in the amended complaint is therefore fatal to the chapter 93A claim in Count III.

E.   Breach of Contract (Count IV)

Plaintiffs allege in the amended complaint that Flagstar "breached the implied obligation of good faith" and "the implied covenant that neither party shall do anything which will destroy or injure the other party's right to receive the fruits of the contract."  (Docket Entry # 17, ¶¶ 203-04).  Plaintiffs also allege that Flagstar "refused to honor their agreements in a fair and equitable manner" and that plaintiffs suffered damages as a result of the breach.  (Docket Entry # 17, ¶¶ 205-06).

Flagstar argues that plaintiffs fail to allege a right or duty that was provided for in a contract in which Flagstar acted with the requisite "dishonest purpose or conscious wrongdoing." (Docket Entry # 22, ¶ G).  Flagstar also argues that any basis for the claim on an alleged verbal agreement is barred by the Statute of Frauds.  See Mass. Gen. L. ch. 259, § 1.

In opposition to the motion to dismiss, plaintiffs generally allege violations of "state and federal law pertaining to both the mortgage and the foreclosure process," Flagstar's failure to "honor Plaintiff's right of redemption" and violations of federal programs based on plaintiffs' purported status as a third party beneficiary.  (Docket Entry # 39, ¶ F).  Plaintiffs fail to allege any specific duty or right that was violated by Flagstar in the 2009 agreement between plaintiffs and Flagstar.

24

As explained previously, defaulted mortgagors are not third party beneficiaries of an assignment between a bank and the government absent explicit language in the contract granting this right.  See Seidel v. Wells Fargo Bank, N.A., 2012 WL 2571200, at *3.  As previously noted, such explicit language is absent in the 2007 mortgage.  In addition, "under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults" and the mortgagee is "equally free to exercise the rights which it had acquired under the loan agreements." Peterson v. GMAC Mortg., LLC, 2011 WL 5075613, at *6. Accordingly, even if Flagstar was required to extend a HAMP modification to plaintiffs, this would not constitute a breach of contract.

Finally, while "a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor," this typically requires making "reasonable efforts to sell the property for the highest value possible."  Armand v. Homecomings Fin. Network, 2012 WL 2244859 at *5.  Because a foreclosure sale has not yet taken place, it is not possible for Flagstar to have breached any duty to act in good faith.

Plaintiffs also fail to identify what violations of federal and state law constituted a breach of contract and fail to explain how Flagstar's actions interfered with their right of redemption.  While plaintiffs have not alleged any verbal representations as applicable in this count, Flagstar is correct in pointing out that any agreements must be reduced to writing to satisfy the Statute of Frauds because the contracts in this case involve an interest in real property.  See French v. Chase Bank, N.A., 2012 WL 1190170, *1 (D.Mass. April 6, 2012).

F.  Violation of Section 48 (Count VI)

Plaintiffs allege in the amended complaint that Bankstreet and Flagstar failed to "sign their respective agreements with Borrowers," "failed to deliver a copy of the agreements to Borrowers signed by the original lender" and "failed to provide Borrowers with the 'Notice of Cancellation.'"  (Docket Entry # 17, ¶¶ 224-36).  Plaintiffs allege that these omissions by Bankstreet and Flagstar created a right to cancel the 2007 mortgage and the 2009 agreement under section 48.  (Docket Entry # 17, ¶ 236).

Flagstar argues that section 48 only applies to home solicitation and door to door sales, facts plaintiffs did not allege.  (Docket Entry # 21, ¶ I).  Flagstar also argues that section 48 specifically states that it does not apply to

transactions where chapter 140D applies, arguing that the
transactions in the case at bar fall under chapter 140D.  (Docket
Entry # 21, ¶ I).  Plaintiffs maintain that section 48 can apply
to mortgage loans and in the event that the case at bar does not
fall under the provisions of chapter 140D, section 48 would
apply.  (Docket Entry # 39, ¶ H).

Section 48 "is intended 'to protect consumers against being
overborne by high pressure tactics of vendors making door to door
pitches in places of residence.'"  Cazales v. HSBC Bank, N.A.,
2012 WL 1969320, *3 n.16 (D.Mass. June 1, 2012).  In denying a
section 48 claim in a mortgage context, the Cazales court noted
that, "The typical mortgage is not sold door to door."  Id.
Plaintiffs do not allege that any contracts entered into with
Flagstar were solicited door to door.  Consequently, they fail to
state a claim under section 48.  See Id. (failure to allege door
to door sales techniques by seller is fatal to section 48 claim).
Count IV is therefore subject to dismissal.

G.  Recission (Count VII)

In the amended complaint, plaintiffs claim a right to
rescind the 2007 mortgage and the 2009 agreement under the
MCCCDA.  (Docket Entry # 17, ¶ 241).  Flagstar argues that the
right to rescind under the MCCCDA expired for the 2007 mortgage
and was never a right under the MCCCDA for the 2009 agreement.

(Docket Entry # 22, ¶ H).  As stated earlier, plaintiffs' right of rescission under the MCCCDA for the 2007 mortgage has expired and no right of rescission under the MCCCDA was created through the 2009 agreement.

## H.  Quiet Title (Count VIII)

Plaintiffs "seek fee simple title over the Deed of Trust" and request this court "release all Trust Deeds and grant Quiet Title to Borrowers."  (Docket Entry # 17, ¶¶ 251-53).  Flagstar argues that plaintiffs' claim to quiet title should be dismissed because the assignment of the mortgage to Flagstar was valid and plaintiffs' notice of rescission was invalid.  (Docket Entry # 22, ¶ L).

As a title theory state, in Massachusetts, the mortgagee, rather than the mortgagor, holds legal title and the mortgagor only holds "an equitable title to the property so long as the debt remains unpaid."  Oum v. Wells Fargo, N.A., 2012 WL 390271 at *3.  "Thus, a quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud."  Id.; see, e.g., Cazales v. HSBC Bank, NA, 2012 WL 1969320 at *3 n.17 (same).  Plaintiffs have not satisfied the debt on their property.  Count VIII therefore fails to state a claim at this point in time.

I.   Negligence (Count IX)

     Plaintiffs allege in the amended complaint that Flagstar and
Bankstreet breached a duty owed to plaintiffs to follow the legal
requirements of the foreclosure process and the requirements
under a Servicer Participation Agreement ("SPA") and HAMP.
(Docket Entry # 17, ¶¶ 254-261).   Flagstar correctly points out
that plaintiffs are not third party beneficiaries or intended
third party beneficiaries under the SPA and therefore no duty was
owed.   Laverty v. Massad, 661 F.Supp.2d 55, 62 (D. Mass. 2009).
Plaintiffs contend that the breach of a statute can create a
"negligence per se claim" even though a private right of action
was not granted.   (Docket Entry # 39, ¶ J).

     As explained earlier, plaintiffs are not third party
beneficiaries or intended third party beneficiaries under the SPA
or HAMP.   Accordingly, there was no duty owed to plaintiffs by
Flagstar and the plaintiffs do not have standing to bring a
negligence claim based on violations of these acts.

J.   Promissory Estoppel (Count X)

     Plaintiffs allege in the amended complaint that there was an
implicit agreement in the 2007 mortgage and the 2009 agreement
that all documents would be "free from fraud" and be "reliable."
(Docket Entry # 17, ¶¶ 263-64).   They also submit that a promise
can be enforceable under promissory estoppel if the plaintiff can

prove reliance.  (Docket Entry # 39, ¶ K).  In general, plaintiffs allege that they "relied on this promise of Flagstar to their detriment, and have been damaged as a result of the failure of the Flagstar to keep its promise."  (Docket Entry # 17, ¶ 265).

Flagstar argues that plaintiffs "have done no more than assert the elements of promissory estoppel."  (Docket Entry # 22, ¶ K).  The amended complaint therefore "fails to assert any factual allegations that give them entitlement to relief under a theory of promissory estoppel," according to Flagstar.  (Docket Entry # 22, ¶ K).

Plaintiffs argue that under promissory estoppel, the plaintiff must prove all of the elements of a contract action except consideration and "[t]he promise must demonstrate 'an intention to act or refrain from acting in a specified way, so as to justify a promise in understanding that a commitment has been made.'"  (Docket Entry # 39, ¶ K).  The promise that plaintiffs argue Flagstar breached was Flagstar's "failure to comply with HAMP, despite leading the Plaintiffs to believe they were properly being evaluated for HAMP."  While there is support for a promissory estoppel claim, see Dixon v. Wells Fargo Bank, N.A., 798 F.Supp.2d 336, 352 (D.Mass. 2011) (promise made by mortgagee to complete a HAMP loan modification can give rise to an action

under promissory estoppel, limited to reliance based recovery);

In re Lacey, 2012 WL 2872050, *26 (Bankr.D.Mass. July 12, 2012)

(same), plaintiffs fail to allege that they relied on a promise

by Flagstar to modify the loan to their detriment in the amended

complaint.  (Docket Entry # 39, ¶ K).  Plaintiffs fail to

identify the particular promise that they relied upon and the

manner in which such reliance was to their detriment.

Plaintiffs do not explain how their agreements with Flagstar

were not "reliable."  Iqbal instructs that, "Threadbare recitals

of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556

U.S. at 678.  In short, plaintiffs fail to articulate the facts

to support the elements of a promissory estoppel claim.  Count X

is therefore subject to dismissal.

K.   Declaratory Judgment (Count XI)

Plaintiffs seek a declaratory judgment which "invalidates

the defective assignment to Flagstar; declares Flagstar's and

Harmon Law's foreclosure practices to be unlawful and in

violation of state laws and regulations, and such further relief

as set forth herein."  (Docket Entry # 17, ¶ 213).  Flagstar uses

the same arguments in opposition to the claim to quiet title to

address the claim for declaratory judgment.  (Docket Entry # 22,

¶ L).

Under 28 U.S.C. §§ 2201 and 2202, federal courts have the right to hear and, at their discretion, either issue or deny a declaratory judgment requested by a party.  <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 313 (1st Cir. 1997).  "The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'; courts have broad discretion to decline to enter a declaratory judgment."  <u>Id.</u> (citation omitted).  As stated earlier, plaintiffs have no standing to challenge the assignment of their mortgage to Flagstar.  Plaintiffs also fail to allege any violations of state laws and regulations in the methods used by Flagstar and Harmon to foreclose on their property.

L.   <u>Flagstar's Request for Declaratory Judgment</u>

In its motion to dismiss, Flagstar requests a declaratory judgment declaring that plaintiffs' notice of rescission is invalid.  Declaratory relief is governed by 28 U.S.C. § 2201(a) which states:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an *appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added).  Rule 7(a), Fed. R. Civ. P., defines a "pleading" as a complaint or an answer.  Here, Flagstar makes a request for a declaratory judgment in a motion

as opposed to a "pleading" within the meaning of 28 U.S.C. §
2201(a).  As explained by the court in <u>Presbytery of New Jersey
of the Orthodox Presbyterian Church v. Florio</u>, 902 F.Supp. 492
(D.N.J. 1995):

> Defendants have not filed any pleadings in this action,
> having chosen to file two motions to dismiss in lieu of
> filing an answer.  As a result Defendants have not asserted
> any cross-claim or any other claim to affirmative relief.
> Since Defendants have failed to file any pleading upon which
> a declaratory judgment could be based, their motion for a
> declaratory judgment is denied.

<u>Id.</u> at 502.  Flagstar's request for a declaratory judgment is
therefore unavailing.

II.  <u>MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 35)</u>

Turning to plaintiffs' motion for partial summary judgment,
the standard is well established.  Under Rule 56(a), Fed. R. Civ.
P., "The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  <u>See</u> <u>Keift v.
American Exp. Co.</u>, 451 F.Supp.2d 289, 292 (D.Mass. 2006); <u>Western
Massachusetts Electric Co. v. International Brotherhood of
Electrical Workers, Local 455</u>, 2012 WL 4482343, at *3 (D.Mass.
Sept. 27, 2012).  Viewing the record in Flagstar's favor,
plaintiffs' summary judgment motion is without merit.

CONCLUSION

33

Accordingly, the motion to dismiss (Docket Entry # 21) is **ALLOWED** except for the request for the declaratory judgment which is **DENIED.**   The partial motion for summary judgment (Docket Entry # 35) is **DENIED.**

                              __/s/ Marianne B. Bowler_____
                              **MARRIANNE B. BOWLER**
                              United States Magistrate Judge